IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SANJUANA PEREZ,<br>    PLAINTIFF, | § <br> § <br> § | |
| VS. | § <br> § | CIVIL ACTION NO. 4:14-CV-039-O |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br>    DEFENDANT. | § <br> § <br> § <br> § <br> § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>
<u>**OF THE UNITED STATES MAGISTRATE JUDGE**</u>
<u>**AND**</u>
<u>**NOTICE AND ORDER**</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

<u>**FINDINGS AND CONCLUSIONS**</u>

**I. STATEMENT OF THE CASE**

Plaintiff Sanjuana Perez ("Perez") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). In January 2011, Perez protectively applied for disability insurance benefits ("DIB") and SSI, alleging that her disability began on January 11, 2011. (Tr. 8, 175-89.) After her applications for benefits were denied initially and on reconsideration, Perez requested a hearing before an administrative law judge ("ALJ"). (Tr. 8, 96-103, 107-13.) The ALJ held hearings on June 21, 2012 and August 22, 2012, and issued an unfavorable

decision on December 18, 2012. (Tr. 5-19, 34-91.) On November 29, 2013, the Appeals Council denied Perez's request for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 1–4.) Perez subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental activities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an

impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding her physical and mental limitations. 20 C.F.R. § 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* § 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 416.920(e). At steps one through four, the burden of proof rests upon the claimant to show that she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Perez presents the following issue: whether the ALJ fully considered Perez's severe impairment of depressive disorder in the ALJ's residual functional capacity ("RFC") determination. (Plaintiff's Brief ("Pl.'s Br.") at 1, 3-12.)

### IV. ALJ DECISION

In his December 18, 2012 decision, the ALJ found that Perez had not engaged in any substantial gainful activity since January 11, 2011, the alleged onset date of Perez's disability. (Tr. 10.) The ALJ further found that Perez suffered from the following severe combination of impairments: "[o]besity, hypertension, lumbar degenerative disease, sleep apnea, hypothyroidism, mild right knee degenerative joint disease, polysubstance abuse (in remission), status-post a left hip fracture, mild diastolic dysfunction, major depressive disorder, a history of systemic lupus erythematosus, a history of recurrent urinary tract infections, a history of

gastroesophageal reflux disease, and a history of asthma." (Tr. 11 (emphasis omitted).) Next, the ALJ held that none of Perez's impairments, or combination of impairments, met or equaled the severity of any impairment in the Listing. (Tr. 11.) As to Perez's RFC, the ALJ stated:

> The claimant retains the [RFC], over a sustained period of time, to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit throughout an 8-hour workday; stand or walk (individually or in combination) 2 to 4 hours in an 8-hour workday, but she must use a cane when walking; and otherwise perform the full range of light work, except: she cannot climb ladders, scaffolds, or ropes; she cannot crouch or crawl; and she can only occasionally climb ramps or stairs, balance, stoop, or kneel.

(Tr. 11 (emphasis omitted).)

The ALJ opined, based on this RFC assessment, that Perez was not able to perform her past relevant work. (Tr. 17.) The ALJ found, however, that Perez was able to perform a number of jobs that existed in significant numbers in the national economy during the period at issue. (Tr. 18-19.) Thus, the ALJ concluded that Perez was not disabled. (Tr. 19.)

## V. DISCUSSION

Perez argues that the ALJ failed to fully consider Perez's severe impairment of depressive disorder in his residual functional capacity ("RFC") determination. (Pl.'s Br. at 6-12.) To begin with, Perez argues that the ALJ's determination that Perez's mental impairment is not severe is not supported by substantial evidence. (Pl.'s Br. at 6.) Specifically, Perez claims that the ALJ's findings that Perez has no more than mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and that Perez has had no episodes of decompensation, are not consistent with the evidence in the record, including the following: (1) Perez's testimony and (2) a November 15, 2011 mental status examination performed by Holly Olivier, D.O. ("Dr. Olivier"), at the John Peter Smith Health Network Behavioral Health Clinic

in Fort Worth, Texas (Tr. 1009). (Pl.'s Br. at 6-8.) Based on Dr. Olivier's November 15, 2011 mental status examination, Plaintiff states:

> Thus, there is a medical opinion from an examining physician[, Dr. Olivier,] that the Plaintiff has a mental impairment which imposes serious limitations in her ability to function socially, or occupationally. The State Agency medical consultants did not have access to this information in assessing the Plaintiff's residual functional capacity. The ALJ, as a layman, is not in a position to evaluate this evidence and to reach a medical conclusion which rejects the opinion of the examining psychiatrist, without any contrary medical evidence or opinion regarding the claimant's mental impairments. . . .
>
> The ALJ could have requested that a medical expert witness be present at the hearing to evaluate the Plaintiff's mental impairments and to assess their impact upon her ability to perform work-related activities. The ALJ failed to do so. He also could have requested a consultative examination to evaluate the extent and severity of the Plaintiff's depression and anxiety. He failed to do so. The ALJ could have recontacted the examining psychiatrist and could have posed interrogatories or requested testimony from this physician to determine the extent and severity of the Plaintiff's mental impairments. He failed to do so.

(Pl.'s Br. at 9.) Perez also claims that the ALJ, in essence, erred in relying on the Physical Residual Functional Capacity Assessment ("PRFCA") opinions of State Agency Medical Consultants Kelvin Samaratunga, M.D. ("SAMC Samaratunga"), and Roberta Herman, M.D. ("SAMC Herman"), that did not have access to Perez's November 15, 2011 mental status examination. (Pl.'s Br. at 9; *see* Tr. 318-25, 358.) In addition, Perez argues that the ALJ erred in not properly evaluating Dr. Olivier's opinion as that of a treating physician and analyzing such opinion pursuant to the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. (Pl.'s Br. at 10-11.)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P,

App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2) & (c), 416.920a(b)(2) & (c).[1] "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[2] and 4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[3] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas,[4] the ALJ must generally find the impairment is not severe at Step Two of the sequential

---

[1] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

[2] The category of concentration, persistence or pace "refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[3] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

[4] If the degree of limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence

evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).[5] To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3); *see Boyd*, 239 F.3d at 705.

RFC is what an individual can still do despite his limitations.[6] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[7] factors to be considered, and is based upon

---

otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

[5] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory paragraph [of the Listing] and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate medically the presence of a particular mental disorder." *Id.* "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.*

[6] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[7] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must

all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In this case, as stated above, the ALJ found that Perez suffered from, *inter alia*, the severe impairment of major depressive disorder. (Tr. 11.) As to her mental impairments, the ALJ stated:

> I also evaluated Ms. Perez's mental impairment under Section 12.00 of the *Listing of Impairments* in 20 C.F.R. Part 404, Subpart P, Appendix 1, in accordance with 20 C.F.R. §§ 404.1520a and 416.920a. Ms. Perez reported symptoms of depression since adolescence, and she stated that she underwent inpatient treatment for her symptoms from a mental impairment in 2008. In her application, she noted her depression was situational, *i.e.*, that it was caused by pain, and she testified at the hearing that her depression was caused by lupus. With regard to the medical evidence, in August 2011 her depression was determined to be "stable" with medication. In November 2011, following an initial evaluation only, she was diagnosed with major depressive disorder, and provided a Global Assessment of Functioning (GAF) rating of 50. I note that she had not taken her medication for about one month, and during a mental status examination she exhibited good concentration, an intact memory, and logical thought processes. For these reasons, I accepted the previous determination that Ms. Perez's depression and anxiety are secondary to her physical conditions. There are no greater than "mild" limitations in her activities of daily living, social adequacy, and concentration attributable to a mental impairment, and there have been no episodes of decompensation. I also determined Ms. Perez retains the ability to perform at least the basic work activities; *e.g.*, understanding, remembering, and carrying out simple instructions; using judgment, responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.
>
> . . . .

---

be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

> Given the extent of Ms. Perez's daily activities and the objective evidence that her impairments have responded well to conservative treatment, I found only limited support for her statements regarding specific exertional and nonexertional limitations, noting also that deconditioning is a factor affecting her ability to function. . . .

(Tr. 14, 16 (internal citations omitted).)

Contrary to Perez's arguments, the ALJ in this case found that Perez did suffer from the severe impairment of major depressive disorder. (Tr. 11.) The ALJ made this finding in spite of his "Paragraph B" analysis under the special technique that Perez had "no greater than 'mild' limitations in her activities of daily living, social adequacy, and concentration attributable to a mental impairment, and there have been no episodes of decompensation." (Tr. 14.) It appears that the ALJ gave Perez the benefit of the doubt in finding that her depression was severe but, ultimately, based on the evidence in the record, did not include any limitations for such depression in the RFC determination.[8] (Tr. 11.)

Perez's argument in this regard appears to be, in essence, that it was inconsistent for the ALJ to find at Step Two that Perez had a severe mental impairment of depression but then fail to include any limitations in the RFC determination regarding such impairment. Generally, the consideration of whether a claimant's impairments are severe at Step Two is a different inquiry

---

[8] The paragraph B criteria limitations of having moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4. Instead, it is used to rate the severity of Perez's mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments." *Id.* These functions include the consideration of the claimant's abilities to: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. *Id.* at *6; *see also* 20 C.F.R. §§ 404.1545(c), 416.945(c). Moreover, "[w]hile the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

than an ALJ's assessment of the claimant's RFC. Under certain circumstances, the ALJ could find that an impairment is severe at Step Two and then not include any limitations in the RFC determination regarding such impairment because the evidence does not support such limitations. *See, e.g., Kozlowski v. Colvin*, No. 4:13-CV-020-A, 2014 WL 948653, at *5-6 (N.D. Tex. Mar. 11, 2014) (finding that the ALJ did not err in finding that the claimant's carpal tunnel syndrome was severe at Step Two but not including any specific limitations regarding such impairment in the RFC determination). However, in this case, the ALJ specifically found, in his required analysis under the special technique in formulating the RFC determination, that Perez retained the ability to, at the least, understand, remember, and carry out *simple* instructions. (Tr. 14.) *See* 20 C.F.R. §§ 404.1545(c), 416.945(c); SSR 96-8p, 1996 WL 374184, at *6. However, the ALJ included no such limitation in his RFC determination. (Tr. 11.) Thus, there is a discrepancy between the ALJ's findings regarding Perez's mental impairments that Perez has the ability to understand, remember, and carry out only simple instructions and the RFC determination that does not include any such limitations.

However, any such error is harmless in this case. *See Mays*, 837 F.2d at 1364; *Morris*, 864 F.2d at 335; *see also Ross v. Colvin*, No. 4:12-CV-283-Y, 2013 WL 5423980, at *9 (N.D. Tex. Sept. 27, 2013) ("[T]he Court finds that, due to the nature of [the claimant's] previous work and the abilities required, any failure by the ALJ to include a mental limitation in the RFC relating to attention, concentration, persistence, or pace is harmless."); *Ramsey v. U.S. Comm'r Social Sec. Admin.*, No. 06-1986, 2008 WL 341698, at *1 (W.D. La. Feb. 7, 2008) (holding that any failure of the ALJ to include the claimant's functional limitation of having moderate difficulty in maintaining concentration, persistence and pace in the hypothetical question posed to the VE was harmless because the jobs identified by the VE were "unskilled and ha[d] no

apparent requirement for concentration, persistence or pace of any significant degree."). At Step Five, the ALJ ultimately determined, based on the testimony of a vocational expert, that Perez was not disabled because she could perform the following jobs that existed in significant numbers in the national economy: (1) small parts inspector (Dictionary of Occupational Titles ("DOT") code 669.687-014; (2) sorter (DOT code 734.687-042); and (3) small product assembler (DOT code 713.687-018). (Tr. 18; *see* Tr. 89.) All three jobs are considered unskilled (Tr. 87) and have a general education development reasoning development level ("RDL") of one, which requires a person to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, *supra,* app. C, 1991 WL 688702. Jobs with an RDL of one are inherently jobs that only require the ability to understand, remember, and carry out simple instructions. In fact, Courts have repeatedly found that jobs with an RDL level of two, which is higher than one and requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," are consistent with limitations to simple instructions and routine tasks.[9] Thus, any error by the ALJ in not including a limitation in the RFC determination that Perez could only understand, remember, and carry out *simple* instructions in the RFC determination is harmless as the jobs identified at Step Five that Perez

---

[9] *See, e.g., Zapata v. Colvin,* No. 4:13-CV-340-Y, 2014 WL 4354243, at *10 (N.D. Tex. Sept. 2, 2014); *Skiles v. Colvin,* No. 4:12-cv-418-Y, 2013 WL 3486921, at *12 n. 22 (N.D. Tex. July 11, 2013) (job that requires reasoning development level of 2 not necessarily inconsistent with an RFC that includes only the ability to perform simple, routine work tasks); *Gaspard,* 609 F.Supp.2d at 617 n. 22 (same) (citing cases); *Veal v. Soc. Sec. Admin.,* 618 F. Supp. 2d 600, 613–14 (E.D. Tex. 2009); *Gaspard v. Soc. Sec. Admin. Comm'r,* 609 F.Supp.2d 607, 617 (E.D. Tex. 2009); *Pete v. Astrue,* No. 08-CV-774, 2009 WL 3648453, at *5–6 (W.D. La. Nov. 3, 2009) ("Contrary to plaintiff's argument, the fact that instructions may be various, furnished in multiple forms, or detailed does not preclude them from being simple. Instead, the classification of these jobs as 'unskilled' indicates they are by definition simple."); *Dugas v. Astrue,* No. 1:07-CV-605, 2009 WL 1780121, at *6 (E.D. Tex. June 22, 2009) ("A limitation of performing 1–2 step instructions in a simple, routine work environment does not necessarily preclude the ability to perform jobs with reasoning levels of 2 or 3.") (internal citations omitted); *Adams v. Astrue,* No. 07-CV-1248, 2008 WL 2812835, at *3 (W.D. La. June 30, 2008) ("As several courts have held, reasoning level two requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations, and appears consistent with residual functional capacity to perform simple, routine work tasks.").

could perform only require understanding, remembering, and carrying out simple instructions.[10]

As to Perez's claim that the ALJ should not have relied on the opinions of SAMC Samaratunga and SAMC Herman because they had been superseded by the mental status examination of November 2011, the Court notes that the SAMC opinions were physical RFC assessments and not mental RFC assessments that would have taken into account Perez's mental impairment. (*See* Pl.'s Br. at 9-10.) Perez also posits that the ALJ could have taken various actions to obtain further evidence regarding Perez's mental impairments. *Id.* However, any conflicts in the evidence, including medical opinions, are resolved by the ALJ, not the courts. *See Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). As to the ALJ's ability to call expert witnesses to the hearing, initiate consultative examinations, or recontact the treating physician, the ALJ is generally not required to do any of these things. The duty to submit evidence showing disability generally lies with the plaintiff. 20 C.F.R. §§ 404.1512(a), 416.912(a). Consultative examinations *may* be ordered when evidence that is necessary cannot be obtained from existing medical sources, a situation which is not found here. *See* 20 C.F.R. §§ 404.1519a, 416.919a. Similarly, an ALJ *may* recontact a claimant's treating physician when the evidence is consistent, but there is insufficient evidence to determine whether a disability exists. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). In this case, there is no evidence that the ALJ's refusal to perform any of the above actions was error.

---

[10] The Court notes that in *Pfeiffer v. Astrue*, No. 07-616-C, 2009 WL 1505375, at *4 (M.D. La. May 28, 2009), the Court held that the ALJ erred in not including any mental impairment limitations in the RFC determination to account for the claimant's severe depression. In *Pfeiffer*, the ALJ, in analyzing the claimant's mental impairments under the special technique, found that the claimant had a mild degree of restriction in activities of daily living, moderate difficulties in maintaining social functioning, and none to mild restriction in maintaining concentration, persistence, and pace. *Id.* at *4. After finding at Step Two that the claimant's depression was severe, the ALJ did not include any limitation or restriction resulting from this impairment in the RFC determination. *Id.* The Court noted that the jobs identified by the ALJ at Step Five were customer service representative, receptionist, and information clerk and could not "support the ultimate conclusion that the plaintiff is not disabled. *Id.* The facts in *Pfeiffer* are distinguishable from the instant case as the jobs identified by the ALJ in *Pfeiffer* appear to require significant interaction with the public, which would not agree with the ALJ's finding that the claimant was moderately limited in his ability to maintain social functioning.

Finally, Perez also complains that the ALJ failed to evaluate the opinion of Dr. Olivier as that of a treating physician by not weighing her opinion as required by 20 C.F.R. §§ 404.1527 and 416.927. Dr. Olivier is a resident psychiatrist who examined Perez on November 15, 2011, diagnosing her, *inter alia*, with depression and prescribing her Cymbalta and Abilify. (Tr. 1006-11.) Controlling weight is assigned to the opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett v. Chater*, 67 F.2d 558, 566 (5th Cir. 1988); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In this case, even assuming without deciding that Dr. Olivier was a qualifying treating physician in the November 15, 2011 Mental Status Examination, she expressed no opinions regarding the effects Perez's mental impairments had on her ability to perform work-related functions. (Tr. 1009.) Therefore, any error the ALJ made in considering such opinion was harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). *See also Quintanilla v. Colvin*, No. EP-12-CV-00444-RFC, 2014 WL 1319298, at *8 (W.D. Tex. Mar. 27, 2014) ("Even if [the doctor's] opinion were to be construed

as that of a treating physician, the failure to treat it as such by the ALJ constitutes harmless error."); *Lumar v. Colvin*, No. 4:13-cv-836-O, 2015 WL 181778, at *6 (N.D. Tex. Jan. 14, 2015) (Because there was substantial evidence in the record supporting the ALJ's RFC and disability determination, "any error relating to the failure of the ALJ to properly analyze [the treating physicians'] opinions would be harmless error"); *McNeal v. Colvin,* No. 3:11–CV–02612–BH–L, 2013 WL 1285472, at *27 (N.D. Tex. Mar.28, 2013) (applying harmless error analysis to the ALJ's improper evaluation of opinion of treating physician); *Bornette v. Barnhart,* 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (in the Fifth Circuit, harmless error exists when it is inconceivable that a different administration conclusion would have been reached absent the error).

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal

conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 17, 2015** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED March 3, 2015.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv